435 P.2d 789

STATE of Idaho, Plaintiff-Respondent,

v.

Jerome T. CARPENTER, Defendant-Appellant.

No. 9855.

Supreme Court of Idaho.

Dec. 20, 1967.

Rehearing Denied Jan. 25, 1968.

Derr, Derr & Walters, Boise, for appellant.

Allan G. Shepard, Atty. Gen., and Warren Felton, Asst. Atty. Gen., Boise, for appellee.

McFADDEN, Justice.

This appeal by Jerome T. Carpenter is from a judgment of conviction of embezzlement and from the order denying his motion for new trial.

On January 5, 1965, Carpenter was the manager of State Liquor Store No. 1, Boise, Idaho, having served in that capacity for about a year. At about 9:30 o'clock a. m. that day, the Boise City Police received a phone call from Carpenter reporting that there had been an armed robbery at the liquor store. Detectives Boyd and Locklear went to the store and were admitted through the rear door by Carpenter. Carpenter advised them that he had come to work at about 6:30 o'clock a. m. that morning in order to work on the books preparatory to a periodic audit of the store to be conducted that day by W. R. Jones, auditor of the State Liquor Dispensary. Carpenter told the officers that at about 7:00 o'clock a. m., a woman dressed in a distinctive skiing outfit tapped on the door and thinking she was in trouble, he opened it. The woman pulled a revolver and forced Carpenter to open the safe, giving her all the paper money from the safe. He stated that she made him sit on the floor and, using a rope, tied his wrists behind his back and to a table, and she then left. The detectives put out a broadcast of the description of the woman and had road blocks established in an attempt to apprehend the woman as described by Carpenter.

After further discussion with the detectives, Carpenter left to have some coffee. Boyd and Locklear continued their investigation of the crime at the liquor store. After Carpenter returned to the store, he accompanied the officers to the police station where Locklear typed Carpenter's story in report form. During the time that he was in the police station he spoke to both Locklear and Boyd, and to Boyd alone. Boyd testified that in his conversation with

Carpenter alone, he told Carpenter that the police were interested in recovering the money and goods, and Carpenter stated he knew the woman and thought he could locate her and recover the money. Carpenter left the station and later came back, advising the police that he had not located the woman; then he left again. About two o'clock that afternoon, Boyd saw Carpenter on the street and was advised that Carpenter still hadn't been able to locate the robber. Boyd didn't see him again until the next morning, when pursuant to a warrant of arrest, Boyd arrested Carpenter.

Appellant objected to the testimony of Detective Boyd as to the conversation he had with appellant, on the ground that no proper foundation had been laid, as required by Escobedo v. State of Illinois, 378 U.S. 478, 84 S.Ct. 1758, 12 L.Ed.2d 977 (1964). The objection was overruled, and appellant later moved that the testimony of Boyd be stricken on the same ground, which motion was also denied. Appellant has assigned error to these rulings of the court and on this appeal contends that the testimony elicited from Boyd was erroneously allowed to be presented to the jury because Carpenter had not been advised of his constitutional right to be represented by an attorney, nor was he advised of his constitutional right to remain silent. In support of this contention, appellant has cited not only Escobedo v. State of Illinois, supra, decided on June 22, 1964, but also Miranda v. State of Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694, decided June 13, 1966, and the following cases from California: People v. Furnish, 63 Cal.2d 511, 47 Cal.Rptr. 387, 407 P.2d 299 (1965); People v. Jacobson, 63 Cal.2d 319, 46 Cal. Rptr. 515, 405 P.2d 555 (1965); People v. Schader, 62 Cal.2d 716, 44 Cal.Rptr. 193, 401 P.2d 665 (1965); People v. Dorado, 40 Cal.Rptr. 264, 394 P.2d 952 (Cal.1964) [See: People v. Dorado, 62 Cal.2d 338, 42 Cal. Rptr. 169, 398 P.2d 361 (1965) vacating opinion 40 Cal.Rptr. 264, 394 P.2d 952].

Appellant recognizes that at the time of the trial of this case in December, 1965,

the decision in Miranda v. State of Arizona, supra, had not been rendered, but nonetheless asserts that, while it is not controlling as to this case (Johnson v. State of New Jersey, 384 U.S. 719, 86 S.Ct. 1772, 16 L.Ed.2d 882 (1966)), the reasoning of that decision should be persuasive here.

In Escobedo v. State of Illinois, supra, the Supreme Court, dealing with the issue of the admissibility of statements obtained from an accused while in police custody, stated:

"We hold, therefore, that where, as here, the investigation is no longer a general inquiry into an unsolved crime but has begun to focus on a particular suspect, the suspect has been taken into police custody, the police carry out a process of interrogations that lends itself to eliciting incriminating statements, the suspect has requested and had been denied an opportunity to consult with his lawyer, and the police have not effectively warned him of his absolute constitutional right to remain silent, the accused has been denied 'the Assistance of Counsel' in violation of the Sixth Amendment to the Constitution as 'made obligatory upon the States by the Fourteenth Amendment,' Gideon v. Wainwright, 372 U.S. 335, at 342, 83 S.Ct. 792, [9 L.Ed.2d 799, at 804, 93 A.L.R.2d 733] and that no statement elicited by the police during the interrogation may be used against him at a criminal trial." 378 U.S. 490, 491, 84 S.Ct. at 1765, 12 L.Ed.2d at 986.

■ Analysis of this statement by the Supreme Court points to four separate circumstances which must occur to require exclusion of an accused's extra-judicial incriminating statements, i. e.: (1) The stage of investigation is beyond that of a general inquiry into an unsolved crime with the investigation beginning to focus on a particular suspect; (2) The particular suspect is in custody; (3) The police are carrying out a process of interrogations tending to eliciting incriminating statements; (4) The suspect must not have been effectively informed of his constitu-

tional rights, or, if so informed, he must not have knowingly and intelligently waived such rights. See the analysis of the application of Escobedo v. State of Illinois as set forth in People v. Dorado, supra. See also: People v. Goedecke, 65 Cal.2d 850, 56 Cal.Rptr. 625, 423 P.2d 777, 783 (1967); and dissent of Justice Mosk, People v. Arnold, 58 Cal.Rptr. 115, 426 P.2d 515, at 524 (Cal.1967); In re Lopez, 62 Cal.2d 368, 42 Cal.Rptr. 188, 398 P.2d 380 (1965).

No contention is made that appellant was ever advised of his right to an attorney or of his constitutional right to remain silent at the time of his interrogation by the detectives. Assuming the statements he made to the officers were of an incriminating nature (which assumption is indulged in only for purposes of this opinion), resolution of which issue is not essential at this time, the facts as presented by this record do not bring it within the framework of Escobedo v. State of Illinois so as to require a reversal.

The initial question presented is whether the officer's inquiry had passed the investigatory stage and had entered the accusatory stage at the time of Carpenter's interrogation. Clearly, at the time the officers were present at the liquor store in response to the report of a robbery of the liquor store, they were engaged in investigatory duties; they were trying to marshal the facts, and in response to the facts given to them by Carpenter, had established roadblocks and put out a description of the alleged robber. After the preliminary report, Carpenter left the liquor store for coffee, the officers continuing their investigation. Mr. Jones, the auditor for the State Liquor Dispensary, had arrived and commenced the audit of the store and its contents. By that time, the police officers admittedly had a question in their minds as to the complicity of Carpenter in the events, which question arose from Carpenter's story; that of his being tied to the table for two and a half hours without being able to get loose and of not moving the table during that time. When Carpenter went to the police station,

it was to give further information; in the meeting he had with Locklear and Boyd, the evidence reflects that initially the conversation between them was a reiteration of the facts as previously given at the liquor store, for Locklear to make his report. Carpenter gave a more thorough description of the alleged robber which the detectives used in another broadcast. This interview took place in the detectives' squad room, where there were two telephones and three or four other detectives on duty, running in and out. Boyd testified that he asked Carpenter if he would come to one of the rooms in the rear of the building where they wouldn't be disturbed; that Carpenter accompanied Boyd, at which time Boyd told Carpenter they were interested in getting the money back and asked him if he knew the woman who held up the liquor store. At this time appellant's objection to the testimony was overruled. Boyd testified that Carpenter admitted knowing the woman who held him up, and then he had asked if Carpenter could locate the woman and get the money. Carpenter said that it would take an hour, and left the station at about eleven; he came back about twelve, stating that he hadn't located the woman. Carpenter then left again. Boyd saw Carpenter on the street later that day, and Boyd asked him if he had heard anything or located the woman and Carpenter said "no." Boyd didn't see Carpenter until the next day. He testified: "Yes, the next day we received an auditor's report and we asked for a complaint and a warrant from the Prosecutor's office, which he gave us, and we went to Jerry Carpenter's house about ten a. m. January 6th, 1965 and arrested him on a warrant charging embezzlement."

 It is our conclusion that the actions of the police officer at the time of the conversation were in furtherance of the investigation into an unsolved crime. The officers, at the time of this conversation, while they did entertain suspicions as to Carpenter, had not fully developed facts sufficient to reach the accusatory stage of their investigation. The next day, the

police received the results of the audit, which revealed that some $2,100.00 in cash was missing along with certain special merchandise. A warrant of arrest was then issued and Mr. Carpenter taken into custody. No claim had been made by Carpenter that the woman took any merchandise and the audit report, showing missing merchandise, must have crystallized the suspicions of the police that Carpenter had embezzled from the store. We hold that the accusatory stage had not been reached at the time of Carpenter's statements because the police were not even aware of the missing merchandise at that time and thus could not have focused on Carpenter as the prime suspect. Carpenter, who first reported the alleged robbery, was being questioned as a "material witness." It was only after the receipt of the auditor's report that his status changed from that of a material witness to a primary suspect. See: People v. Goedecke, supra.

▇ Interwoven with the question whether the investigation had shifted from mere investigatory stage to the accusatory stage is the question whether Carpenter was actually in "custody" at the time the questioned interrogation took place. The Supreme Court of California in People v. Arnold, 58 Cal.Rptr. 115, 426 P.2d 515 (1967), was confronted with the problem of determining when a person is in custody. That court stated:

> " * * * Although we have consistently and expressly held that custody constitutes an essential element of the accusatory stage, we have recognized that custody could occur in a situation in which defendant had not been arrested but his freedom of movement curtailed. In the instant case we are called upon to define more precisely the elements in the curtailment of that freedom of movement." 58 Cal.Rptr. at 119, 426 P.2d at 519.

Following that statement, the court reviewed recent California decisions in the area of "in custody" interrogation, and concluded as follows:

> "Although in this pre-Miranda [Miranda v. State of Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966)] case we are not constitutionally compelled to accept *Miranda* standards, we find the above reasoning entirely persuasive in defining custody as that term is used in *Escobedo* [supra] and *Dorado* [supra]. Accordingly, we adopt the definition of the United States Supreme Court of in-custody interrogation: 'By *custodial* interrogation, we mean questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way.' (Italics added.) (384 U.S. at p. 444, 86 S.Ct. at p. 1612.) We hold that custody occurs if the suspect is physically deprived of his freedom of action in any significant way or is led to believe, as a reasonable person, that he is so deprived." 58 Cal. Rptr. at 121, 426 P.2d at 521.

Four members of that court concurred in that conclusion. However, Justice Mosk dissented from the foregoing, in which dissent, two other members of the court joined. The basis of the dissent is expressed as follows:

> "In People v. Furnish (1965) 63 Cal.2d 511, at p. 516, 47 Cal.Rptr. 387, at p. 391, 407 P.2d 299, at p. 303, this court explained that while formal arrest is not essential to the advent of the accusatory stage, the circumstances must indicate 'pressures short of arrest which the police exert to *detain* the suspect.' (Italics added.) In no case, however, has this court gone so far as to hold that the *Dorado* rule becomes effective when no detention—actual or constructive, overt or subtle—is exercised. In Lopez, 62 Cal.2d 368, at pp. 372–373, 42 Cal.Rptr. 188, at p. 191, 398 P.2d 380, at p. 383, this court said that 'we believe that the United States Supreme Court in *Escobedo* sought primarily to prevent police tactics which, in the past, have spawned involuntary confessions.' Admittedly custody plays a role in the totality of co-

ercive circumstances. If the freedom of motion of an individual is circumscribed or if he is involuntarily detained it is clear that he is at the very least a suspect and perhaps about to be cast in the role of a prospective defendant. The lesson of *Escobedo, Dorado,* and the similar cases, is that this invokes pressures that may impel one to choose means not thoughtfully conceived in order to extricate himself. On the other hand, it is equally well settled 'that not all questioning will constitute forbidden interrogation even under the most expansive reading of *Miranda.*' (Graham, Custodial Interrogation (1966) 14 U.C.L.A.L.Rev. 59, 96.)

\* \* \* \* \* \*

"The defendant urges an anachronistic and impractical 'subjective' concept in seeking to exclude her statements not because she *was* in custody but because she later testified that she *thought* she was in custody. Approval of this mere *ipse dixit* declaration of her thought processes— and rejecting all the objective evidence that no detention was contemplated or effected—is a giant departure from all accepted concepts of police restraint. The only way to avoid abuse is to adhere to our previously enunciated rule of either actual or constructive custody or detention in fact. \* \* \*" 58 Cal. Rptr. p. 124, 426 P.2d pp. 524, 525.

Carpenter testified he told Officer Boyd that he would go and look for the woman "Mainly because I was becoming quite afraid because everybody was accusing me, telling me that I had done it myself, and I just wanted to get out of the police station to get away from there." It is our conclusion that this statement, even accepting it at face value, does not assist the appellant in his contention that he was in custody, because admittedly he was not then restrained of his liberty, leaving the police station at about eleven, and returning voluntarily an hour later.

 Appellant assigns as error the refusal of the trial court to give certain instructions requested by him. The first of

these dealt with the consideration to be given by the jury to arguments by attorneys, stating in effect that such arguments are proper to be considered as an aid in recalling the evidence and in applying the law to the evidence and in determining reasonable inferences to be drawn from the evidence, but that such arguments are not evidence. The trial court refused to give the instruction, noting on it that it was covered by instructions given. The trial court, by instruction No. 2, advised the jurors that they were the exclusive judges of the facts and the value of the evidence; that their determination must be made by the evidence produced in court,

> "and if any counsel intimated by any of his questions that certain facts were, or were not, true, you must disregard any such intimation, and must not draw any inferences from it. As to any statements made by counsel in your presence concerning the facts in the case, you must not regard such statement as evidence."

We see no prejudicial error in refusing the requested instruction. It is recognized that the better practice would be for the trial court to advise the jury as to the role that arguments by counsel is to play in their deliberations. However, nothing in this record reflects any undue emphasis given to the arguments by counsel and the instructions given limited the jury to a consideration of evidence before it. See: State v. Gailey, 69 Idaho 146, 204 P.2d 254 (1949); State v. Baldwin, 69 Idaho 459, 208 P.2d 161 (1949).

 The trial court refused to give appellant's fourth requested instruction, to the effect that the information is not evidence but is only a formal charge containing allegations requiring proof by the testimony of witnesses or by facts and circumstances, which refusal is also assigned as error. The trial court noted on this requested instruction that it was "covered." Instruction No. 1, given by the court, among other elements, stated:

> "You must not suffer yourselves to be biased against a defendant because of the

fact that he has been arrested for this offense, or because an Information has been filed against him, or because he has been brought before the Court to stand trial. None of these facts is evidence of his guilt, and you are not permitted to infer or to speculate from any or all of them that he is more likely to be guilty than innocent."

The trial court, by Instruction No. 5, fully instructed the jury as to the presumption of innocence attendant an accused, and that the state must prove an accused's guilt beyond a reasonable doubt. By Instruction No. 4, the jury was advised that allegations of the amended information, and the plea of not guilty "requires the State to prove every material allegation contained in the Amended Information beyond a reasonable doubt." Considering all the instructions given, no error appears in refusing to give this requested instruction.

■ Also, appellant asserts error in the trial court's refusal to give his requested instruction No. 5, which listed a series of six elements of the crime of embezzlement. The trial court gave an instruction defining embezzlement as follows:

"Embezzlement consists of the fraudulent appropriation of money or other property by a person to whom it has been entrusted. In accord with this definition, the law prescribes that every officer of this state, and every deputy, clerk, or servant of any such officer, who fraudulently appropriates to any use or purpose not in the due and lawful execution of his trust, any property which he has in his possession or under his control by virtue of his trust, is guilty of embezzlement."

This definition is based on the provisions of I.C. § 18–2401, and § 18–2402, defining embezzlement and embezzlement by a public officer. The trial court then instructed in the terms of I.C. § 18–114, requiring in every crime or public offense a union, or joint operation, of act and intent, and set out the provisions of I.C. § 18–115, pertaining to manifestation of in-

tent. The court gave two other instructions pointing out that in the crime of embezzlement, a necessary element in its commission is the existence in the mind of the perpetrator of the specific intent to fraudulently appropriate to any use or purpose not in the due and lawful execution of his trust, any property which he has in his possession or under his control by virtue of his trust. Another instruction dealt with the requirement that the defendant must have an intent to defraud. Other instructions dealt with necessity of appropriation of money to the accused's own use.

■ The jury was fully instructed on the elements of the crime of embezzlement, and when the instructions given properly state the law, it is not error to refuse to give a requested instruction which covers the same material in somewhat different terms. State v. Haggard, 89 Idaho 217, 404 P.2d 580 (1965). State v. Puckett, 88 Idaho 546, 401 P.2d 784 (1965).

■■ Appellant by another assignment of error contends that the jury erred in finding the appellant guilty of the charges contained in the information. The record has been carefully examined and even though the state asserted the evidence disclosed the commission of the crime of embezzlement, while appellant contends that robbery by a third person was the only crime disclosed, there is substantial and competent evidence to sustain the jury verdict. State v. Ramsbottom, 89 Idaho 1, 402 P.2d 384 (1965); State v. Peterson, 87 Idaho 147, 391 P.2d 846 (1964); State v. Booton, 85 Idaho 51, 375 P.2d 536 (1962); State v. Coburn, 82 Idaho 437, 354 P.2d 751 (1960). Appellant also claims the verdict was invalid because the jury found him "guilty as charged in the Information" but did not find him guilty as charged in the Amended Information. This is a mere technicality: not of a prejudicial nature. I.C. §§ 19–2819, 19–3702.

It is asserted the trial court erred in denying appellant's motion for new trial. This motion was based on two grounds: first, that the testimony of Officer Boyd was

inadmissible, which question has previously been resolved in this opinion; and second, that the verdict was contrary to law and the evidence in that no evidence was presented showing or tending to show any conversion by the appellant of the merchandise and money referred to in the information, and further, that there was no evidence showing any appropriation by appellant to his own use of any of the merchandise or money. Related to this second ground for his motion is appellant's assignment of error to the effect that the jury erred in finding him guilty of the charges contained in the information.

█ In answer to these contentions, it is to be noted that appellant was charged with commission of the crime of embezzlement by a public officer as defined by I.C. § 18–2402. That section states that a public officer, "who fraudulently appropriates to *any use or purpose not in the due and lawful execution of his trust*, any property which he has in his possession or under his control by virtue of his trust, or secretes it with a fraudulent intent to appropriate it to such use or purpose, is guilty of embezzlement." (Emphasis added.) Nowhere is it stated therein that the appropriation need be to the accused's own use. The requirement of the provision is that the accused appropriate the property to any use inconsistent with the trust under which he controlled the property. In this case the evidence is largely circumstantial, which is often true in charges of embezzlement. See: State v. Smith, 48 Idaho 558, 283 P. 529 (1929); State v. Jester, 46 Idaho 561, 270 P. 417 (1928); State v. Sage, 22 Idaho 489, 126 P. 403 (1912). By the report of the auditor of the state liquor dispensary, the state proved a shortage of a substantial sum of money and merchandise which came into the defendant's control as manager of the store. The state proved that an audit was to be conducted on the day of the alleged robbery. Evidence was put into the record by the state raising substantial doubt as to the veracity of appellant's story as to the robbery, which evidence included the rope appellant claims was used to secure him to the table and the photographs of the table showing numerous articles on the top of the table undisturbed. If the jury had believed appellant, it would have acquitted him. However, by its verdict, the jury rejected his testimony and found him guilty as charged. It is our conclusion from examination of the entire record that the record is sufficient to sustain the jury's verdict. Hence, the trial court did not err in refusing to grant appellant's motion for new trial, nor is there merit to appellant's assignment of error that the jury erred in finding him guilty.

█ Appellant claims that the trial court erred in overruling his objections to questions propounded by the state's attorney to the state's first witness, Mary Logan, an employee of the liquor store in question. In her examination she testified to the procedures employed in accepting an order for merchandise, how it is paid for, how the change was handled, posted, recorded and delivered to the customer. She was asked:

"Q. Now let's assume when you go back to buy change, as you testified, out of the safe, let's assume you made a twenty-dollar error, or, let's assume you tried to steal twenty bucks."

Objection was interposed as assuming facts not in evidence. The objection was overruled and the witness was asked:

"Q. Let's assume for this purpose that you tried to steal twenty dollars. How would that shortage show up?"
The witness answered: "It would show up when the manager counted his change." The trial court did not err in overruling this objection. The witness had explained in great detail the inner workings of the store, the bookkeeping procedures, the methods of accounting. It is self-evident that the purpose of the question was to elicit an explicit example of what would happen in event of an attempted short changing by employees.

█ Finally, appellant contends that the trial court erred in sentencing the defend-

ant to imprisonment for a term not to exceed seven years, contending the sentence is excessive and unwarranted. The term of the sentence imposed was less than the ten year maximum sentence for the crime of which appellant was convicted. I.C. § 18-2413. No abuse of discretion by the trial court in imposing this sentence appears, and thus it will not be disturbed by this court. King v. State, 91 Idaho 97, 416 P.2d 44 (1966); State v. Gish, 89 Idaho 334, 404 P. 2d 595 (1965).

Judgment affirmed.

TAYLOR, C. J., and SMITH, McQUADE and SPEAR, JJ., concur.