448 P.2d 768

The STATE of Idaho, Plaintiff-Respondent,

v.

Arnold W. FISK, Defendant-Appellant.

No. 10122.

Supreme Court of Idaho.

Dec. 27, 1968.

C. H. Higer, Emmett, for appellant.

Allan G. Shepard, Atty. Gen., and Denison E. Smith, Asst. Atty. Gen., Boise, Louie Gorrono, Pros. Atty., Emmett, for respondent.

TAYLOR, Justice.

Defendant (appellant) Arnold W. Fisk was convicted by verdict of a jury of murder of the second degree, adjudged guilty, and sentenced to a term of not to exceed 15 years in the state penitentiary.

The conviction and judgment arose out of the shooting death of Fisk's mining partner Jack Donnelson at the Poor Boy mine two miles east of Pearl, Idaho, on the evening of March 16, 1967. It is uncontroverted that Donnelson died that night as

the result of a wound in the head inflicted by a .22 caliber bullet fired from a rifle by defendant.

Defendant made numerous oral and written admissions of the shooting, both to law officers and to private citizens. After a pretrial hearing thereon the district court held the statements to be admissible in evidence and they were introduced during the course of the trial. On trial Fisk was called as a witness by his attorney and during examination testified concerning the killing.

A blackboard bearing a drawing of the floor of the cabin where the shooting occurred, and showing thereon the location of the furnishings in the room, was used to illustrate the witness' testimony. In answer to his counsel's questions defendant testified to events leading up to the killing. In summary, he related that decedent began a quarrel and continued to become more violent in his manner and speech, until defendant became fearful that deceased would assault him. Defendant then walked around the table at which deceased was seated and picked up the gun which stood against the wall back of deceased. Coming back around the table defendant faced deceased across the table with the gun in his hands. When deceased made a move, which appeared to defendant as an attempt to arise and attack him, defendant fired the gun. The bullet struck deceased in the head and he fell against the edge of the table. The chain of events was given in great detail, indicating that defendant had a clear recollection of what transpired.

On this appeal no contention is made that the verdict was not supported by the evidence. All of the 20 assignments relate to alleged procedural errors.

First, it is urged that the court erred in delaying the appointment of counsel for defendant. Prior to the arrest on March 16th, Ruth Whiting, the wife of another of defendant's partners, and a close friend of the defendant, was told by Fisk of the killing. At that time she offered to obtain an attorney for defendant, but he refused to accept the offer. Defendant was arrested at about midnight of March 16th. Numerous times during the night and into the early morning of the 17th defendant was informed of his right to counsel and of his right to court appointed counsel at county expense. On all such occasions Fisk stated that he did not want a lawyer. He appeared in Gem County probate court on March 17th. There for the first time he indicated a desire to have counsel. On March 18th (Saturday) the probate judge wrote to the district court requesting that court to appoint counsel for defendant. The district court in compliance with the request appointed counsel for the defendant on Monday, March 20th. The attorney was orally notified of his appointment at 9:30 p. m. on March 23rd. Written order appointing counsel was filed March 27, 1967. Trial was had in September, 1967. Defendant urges that the delay prevented his counsel from properly investigating the evidence, preserving the evidence, and presenting the case. The preservation of evidence concerned several alleged bruise marks on the rib cage area of defendant's body, purportedly inflicted by decedent in a fight with defendant several weeks before the homicide. Apparently the bruises had disappeared before counsel saw defendant and before he had an opportunity to photograph the bruises for presentation to the jury. Evidence (including X-ray photographs) was introduced at the trial for the purpose of showing that defendant and decedent had engaged in a physical encounter some weeks prior to the shooting, and also for the purpose of showing that defendant was suffering from several fractured ribs at the time of the shooting. This evidence was presented for the purpose of showing that defendant had acted in self-defense at the time of the homicide.

Defendant also urges that the court's failure to appoint counsel earlier gave the state the unfair opportunity to gather its evidence, while defendant was unable to gather and preserve his evidence,

and that therefore the court should have granted defendant's motion to suppress all of the state's evidence obtained prior to March 23, 1967. Concededly the United States Supreme Court has held that certain pretrial investigative procedures involve "critical" stages of proceedings, during which the accused is entitled to the assistance of counsel; e. g. custodial interrogation of accused and out of court identification at a police line-up. United States v. Wade, 388 U.S. 218, 87 S.Ct. 1926, 18 L.Ed. 2d 1149 (1967); Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694, 10 A.L.R.3d 974 (1966); Escobedo v. Illinois, 378 U.S. 478, 84 S.Ct. 1758, 12 L.Ed. 2d 977 (1964). Counsel has not cited, nor have we found, authority for the proposition that the mere gathering of evidence by the police creates a critical state in the proceedings such as to require assistance of counsel for the accused. A contrary ruling would require the police to take counsel for the accused with them when they are called to the scene to investigate reported criminal activity. The delay in the appointment of counsel in this case did not "preclude the giving of effective aid in the preparation and trial of the case." Powell v. Alabama, 287 U.S. 45, 71, 53 S.Ct. 55, 65, 77 L.Ed. 158 (1932). See Freeman v. State, 87 Idaho 170, 392 P.2d 542 (1964); State v. Peters, 78 N.M. 224, 430 P.2d 382 (1967).

Other assignments of error raised the issue as to the voluntariness of statements made by defendant to police officers and to the prosecuting attorney, which were admitted in evidence. The briefs do not make certain which statements are claimed to have been involuntary. The following statements appear to have been made on the night of, and in the early morning after, the shooting:

1. At 11:00 p. m. defendant told Mrs. Whiting and her son Philip that he had shot and killed Donnelson because decedent did not listen to him when he was reading aloud;

2. At 11:30 p. m. defendant told Mrs. Whiting, Philip Whiting, and Ada County deputy sheriff Bert Wilson, that he had shot the decedent;

3. At about midnight, while driving to the Poor Boy mine, defendant stated to Philip Whiting, deputy Wilson and deputy sheriff David Rowe, that he shot decedent because he was afraid decedent was going to pick a fight with him and further injure his ribs;

4. At 2:10 a. m., while still at the Poor Boy mine, defendant dictated to Gem County sheriff Donald Rekow a written statement that he shot decedent because he was fearful that decedent was going to give him another beating. The statement was witnessed by deputy Wilson;

5. While being driven from the mine to Emmett, Idaho, defendant stated, according to Emmett patrolman John Wallace, that he was sorry he killed Donnelson, but he was afraid of receiving another beating. Sheriff Rekow was in the car at the time of the alleged statement, but testified that defendant had not discussed the shooting on the drive from the mine;

6. Around 3:30 a. m., defendant wrote a statement that he killed Donnelson for which he was sorry, and he did the act to preserve himself from bodily harm. This statement was made in the presence of sheriff Rekow, prosecuting attorney Louie Gorrono (who prosecuted this action on behalf of the state), patrolman Wallace and officer Jerry Holsbeck. The record is not clear as to whether a person named William McConnell was also present.

Defendant contends that he was too intoxicated to make a knowing and intelligent waiver of his right to remain silent and of his right to counsel at the time he made the statements. A blood test taken at 3:30 a. m. on the 17th, revealed that defendant's blood-alcohol level was .156% of alcohol by weight.

Defendant testified that since 5:00 a. m. of the 16th he had eaten only one or two sandwiches on that day, and had consumed 15 shots of whisky, plus substantial amounts of beer and wine during the period

from 11:00 a. m. to 9:00 p. m. There was no evidence that he had consumed any alcohol after 9:00 p. m. The police officers and the two Whitings testified that defendant appeared to have consumed alcohol prior to making the statements, but that he did not appear to be intoxicated at the time he spoke or wrote the admissions in question. They also testified that he walked and talked normally; that he correctly directed them to the mine; that he had described the murder scene accurately; that he did not drop off to sleep during the evening; that he did not become ill or "unsanitary"; that he had urinated only once; and that he never broke down or indulged in crying spells. There was also evidence that prior to each statement made by defendant in the presence of police officers he was given the so-called "Miranda" warnings substantially in the following form:

"You have the right to remain silent. Anything you say can and will be used against you in a court of law. You have the right to talk to a lawyer and have him present with you while you are being questioned. If you cannot afford to hire a lawyer, one will be appointed to represent you before any questioning, if you wish one.

"Do you understand each of these rights I have explained to you?

"Having these rights in mind, do you wish to talk to us now?"

The officers present testified that every time he was so warned defendant stated that he did not want a lawyer and that he wanted to tell what had happened. After a pretrial hearing at which all of the above evidence relative to admissions made by defendant was introduced, the court ruled that the statements were admissible in evidence.

The statement made by defendant to Mrs. Whiting and her son prior to the arrival of police officers, was patently neither a result of, nor incident to, custodial interrogation, and hence was not within the purview of the line of authorities culminating in Miranda v. Arizona, supra. As to the statements given police officers, we assume for the purpose of this discussion, that they resulted from custodial interrogation. The overwhelming weight of the evidence points to the conclusion that defendant was correctly informed of his "Miranda" rights prior to each statement; that he expressly waived such rights; and expressly indicated a strong desire to make the incriminating statements. The only issue is whether the waiver was voluntarily, knowingly and intelligently made as required by the "Miranda" decision. The resolution of this issue turns on the evidentiary question as to whether defendant was so intoxicated as to be unable to make a voluntary, knowing, and intelligent waiver of his constitutionally guaranteed rights. See State v. Lucero, 445 P.2d 731 (Mont. 1968). We have recognized the presumption against waiver of fundamental constitutional rights. Abercrombie v. State, 91 Idaho 586, 428 P.2d 505 (1967).

The trial court recognized the burden devolving upon the state to prove a voluntary, intelligent and knowing relinquishment of constitutional rights, but nevertheless ruled, on the basis of evidence outlined herein, that, although defendant had been drinking, he was sober enough to, and did, voluntarily, intelligently and knowingly waive his right to remain silent and his right to counsel prior to making the custodial admissions. While there was evidence tending to support both sides of the issue, that supporting the trial court's ruling was sufficient to justify the admission of the incriminating statements. Under such circumstances we cannot overturn the decision of the trial judge. See State v. Spencer, 74 Idaho 173, 258 P.2d 1147 (1953); See also State v. Haggard, 89 Idaho 217, 404 P.2d 580 (1965).

Defendant further contends that he was presumptively intoxicated at the time he made the statements by reason of the

result of the blood test taken at 3:33 a. m. That test revealed the existence of .156% of alcohol by weight in defendant's blood. This contention is based upon I.C. § 49–1102(b) 3. That section provides that in a criminal prosecution for the offense of driving a vehicle while under the influence of intoxicating liquor, the defendant is presumed to be under the influence of intoxicating liquor if at the time there was present in his blood .15% or more of alcohol by weight. This presumption is a creature of the statute and by its own terms is limited to prosecutions on the charge of driving while under the influence of intoxicating liquor. In the prosecution on a charge of murder such as this, the blood test shown does not give rise to the statutory presumption. At most it was evidence to be considered along with all the other evidence on the issue, in determining whether defendant voluntarily, intelligently and knowingly waived his constitutional rights.

■■ Defendant contends that the trial court erred in ruling that the defense could not introduce evidence upon trial as to the voluntariness of his extra-judicial statements. We have held that:

"Whether a confession is admissible as being voluntarily given is a question directed primarily to the discretion of the trial court, * * *. The function of the court is to determine the admissibility of evidence presented, and the function of the jury is to determine the weight to be given the evidence and the credibility of the witnesses * * *.

"It is recognized that competent and relevant testimony touching upon the voluntary nature of a confession is admissible in evidence for consideration of the jury in determining whether a confession has been voluntarily given." State v. Hall, 88 Idaho 117, 397 P.2d 261 (1964). See also State v. Van Vlack, 57 Idaho 316, 65 P.2d 736 (1937).

Such procedure was approved by the Supreme Court of the United States in Jackson v. Denno, 378 U.S. 368, 84 S.Ct. 1774, 12 L.Ed.2d 908 (1964). Properly the trial court should initially determine that the confession or admission was voluntarily made as a basis for its admission in evidence. Thereafter, the jury may hear and consider evidence on the voluntariness of a statement for whatever effect such evidence might have upon the weight to be given the confession or admission. In Jackson v. Denno, the Supreme Court apparently also approved the method pursued by the trial judge in this case, that is, that the trial judge initially determine the voluntariness of the confession and admission for all purposes. Defendant cites Sims v. Georgia, 385 U.S. 538, 17 L.Ed.2d 593, 87 S.Ct. 639, (1967); Pinton v. Pierce, 389 U.S. 31, 88 S.Ct. 192, 19 L.Ed.2d 31 (1967); as opposing the ruling in Jackson v. Denno. It appears these two cases misconstrue the clear language of Jackson v. Denno. However that may be, it is apparent that the trial court did not follow the rule as stated in State v. Hall, supra. However, the transcript reveals that both before and after the ruling, defendant was permitted to present evidence before the court of the issue of the voluntariness of his admissions. Moreover, he testified freely and at length to substantially the same facts as he had admitted to the police officers. He also admitted the killing to his own friends prior to speaking with the officers. We are satisfied from the record that appellant was not prejudiced by the ruling of the trial court. State v. Hall, supra.

■ Defendant also assigns as error the failure of the court to suppress the state's evidence when it became apparent that the name of Mr. Gorrono, the prosecuting attorney, was not endorsed on the information as a witness. As we have noted, Mr. Gorrono was present when defendant wrote the statement admitted in evidence as state's exh. 7. I.C. § 19–1302 provides that on informations filed by the prosecuting attorney as informant, he shall subscribe his name thereon and endorse thereon the names of the witnesses known to him at the time of filing the information, and

before trial the names of such other witnesses as shall then become known to him. The information was signed by Mr. Gorrono in his official capacity. The purpose of the statute "is to inform the defendant of the names of the witnesses who are to testify against him, so that he may have an opportunity to meet and controvert their evidence." State v. Stewart, 46 Idaho 646, 270 P. 140 (1928); accord State v. Mundell, 66 Idaho 297, 158 P.2d 818 (1945). Mr. Gorrono did not testify as a witness. Defendant presumably knew that Mr. Gorrono was present at the time the statement in question was taken from him. Since Mr. Gorrono did not become a witness, but appeared only in his official capacity, the failure to endorse his name on the information as a witness could neither surprise nor prejudice defendant.

Other assignments of error relate to alleged defects in the instructions given to the jury, and to the failure of the court to review certain requested instructions. We have carefully considered defendant's arguments and the instructions, both given and requested. It is our conclusion that the instructions as given and taken as a whole correctly stated to the jury the law applicable to the issues being tried, and necessary for their information. I.C. § 19–2132. Requested instructions which were refused, insofar as they were correct statements of law, were covered by the instructions given.

The judgment is affirmed.

Defendant has applied to this court for an allowance of attorney's fees and expenses for the prosecution of this appeal. The cause is remanded to the district court with directions to fix and allow such fees and expenses as that court may determine to be reasonable and just, having regard to the entire record and the applicable law. I.C. §§ 19–852, 19–859 and 19–860; State v. Thomas, 82 Idaho 473, 355 P.2d 674 (1960).

SMITH, C. J., and McQUADE, McFADDEN and SPEAR, JJ., concur.