(May 25, 1921.)

STATE, Respondent, v. VICENTE RAMIREZ, Appellant.

[199 Pac. 376.]

CRIMINAL LAW—TRIAL—EVIDENCE—REMARKS OF THE COURT—VERDICT.

1. In order for a witness to be permitted to use a memorandum for the purpose of refreshing his memory respecting a fact, it should be shown that the memorandum was written by the witness, or under his direction, at the time when the fact occurred, or immediately thereafter, or at any other time when the fact was fresh in his memory and he knew that the same was correctly stated in the writing as provided by C. S., sec. 8033.

Points Decided.

2. Where a witness is permitted to use a memorandum for the purpose of refreshing his memory, and it is not shown that it was prepared in accordance with the provisions of C. .S., sec. 8033, prejudicial error is not shown where the testimony of the witness, after inspecting it is substantially the same as his testimony given previous to his inspection thereof.

3. Error in permitting a witness for the state in a criminal case to use a memorandum for the purpose of refreshing his memory, which was not prepared by himself, or under his direction, is not prejudicial where the defendant subsequently testifies to substantially all the facts testified to by the witness in relation to matters contained in the memorandum.

4. A direction given by the trial court in a criminal case to an interpreter in the following words: "Well, just give what he answers now. Don't make any difference what he said before"—is not a comment .upon the credibility of the witness, nor does it amount to an instruction to the jury to disregard the previous testimony of the witness, or that the jury should not test the credibility of the witness in view of any conflicting statements which he may have made in the course of his testimony.

5. The testimony of a physician and surgeon to the effect that stains upon overalls worn by one accused of murder at the time of the homicide consisted of blood and dirt is not incompetent, although there was no evidence at the trial to. show that the blood was that of a human being, and although the witness was not required to state the character of the tests he made to determine what caused the stains.

6. All instructions given by the court must be construed together. It is not error to instruct the jury that circumstantial evidence is legal evidence in an instruction defining circumstantial evidence, where in the other instructions all the essential elements of the crime are pointed out, and the jury is instructed that it is necessary that the defendants be proved guilty so clearly and conclusively that there is no reasonable theory upon which they, or either or both of them, can be innocent, in order to render a verdict of conviction.

7. Under C. S., sec. 8212, which provides that every person guilty of murder in the first degree shall suffer death or be punished by imprisonment in the state penitentiary for life, and that the jury may decide which punishment shall be inflicted, a verdict

5. Law of evidence of blood-stains, see note in 15 Ann. Cas. 811.

6. Necessity that circumstantial evidence exclude every reasonable hypothesis except guilt of defendant, see note in Ann. Cas. 1913E, 428.

finding defendant guilty of murder in the first degree as charged in the information, and fixing the penalty at execution, is not uncertain. By the use of the word "execution" in the verdict, the jury decided that the punishment to be inflicted is that of death.

8. A judgment of conviction in a criminal case cannot be permitted to stand unless the defendant has had a fair and impartial trial. But where an appellant seeks a reversal, not on the ground of specific errors committed at the trial or because he has been deprived of some constitutional or statutory right, it is incumbent upon him to cause it to appear that the verdict of conviction resulted from a consideration by the jury of incompetent evidence, or evidence which does not tend to prove him guilty of the crime alleged, or that the trial was so improperly conducted that it can be determined from the record as a whole that the defendant was prejudiced in his substantial rights.

APPEAL from the District Court of the Ninth Judicial District, for Madison County. Hon. James G. Gwinn, Judge.

Appellant was convicted of murder in the first degree. *Affirmed.*

J. B. Eldridge and Ira E. Barber, for Appellant.

A witness can only refer to memoranda made by himself, to refresh his memory. (*Massey v. Hackett,* 12 La. Ann. 54; *Price v. Garland,* 3 N. M. 505, 6 Pac. 472; *Dwight v. Cutting,* 91 Hun, 38, 36 N. Y. Supp. 99.)

A witness may refresh his memory by a writing only when it was written by the witness, or under his direction, at the time when the fact occurred, or immediately thereafter, or at another time when the fact was fresh in his memory, and he knew that the same was correctly stated in the writing. (*Manchester Assur. Co. v. Oregon R. Co.,* 46 Or. 162, 114 Am. St. 863, 79 Pac. 60, 69 L. R. A. 475; Underhill, Crim. Ev., sec. 217.)

The court erred in instructing the jury that circumstantial evidence was legal evidence, without going further and instructing as to the essential requirements of circumstantial evidence in order to justify a conviction. (*Robertson v. State,* 33 Tex. Cr. 366, 26 S. W. 508; *State v. Fitzgerald,* 72 Vt.

142, 47 Atl. 403; *Hamilton v. State,* 96 Ga. 301, 22 S. E. 528.)

The jury fixed the punishment at execution. An examination of authorities gives such varied meaning to the word "execution" as to leave the duty of the court a mere matter of conjecture. "Execution," generally speaking, is to put the party entitled into possession of that which the law gives him; to put the judgment of the law into force; a carrying out of the final decree of the court; a process authorizing seizure or appropriation in order to the satisfaction of a judgment; or putting the sentence of the law into force. (3 Words & Phrases, 2564, 2565.) Similar verdicts have been held to be bad. (*Thetge v. State,* 83 Ind. 126; *Turbaville v. State,* 58 Ga. 545; *Washington v. State,* 55 Fla. 194, 46 So. 417; *Allen v. State,* 52 Ala. 391; *Commonwealth v. Walsh,* 132 Mass. 8; *O'Leary v. People,* 17 How. Pr. (N. Y.) 316.)

Having permitted the jury to be discharged and separated, the court was without power to make correction, and the verdict must fail to support the judgment and order of the court. (C. S., sec. 8999; 12 Cyc. 699, 700, and cases cited.)

Sec. 18, art. 1, of the constitution, guarantees to a defendant a fair and impartial trial. (*Day v. Day,* 12 Ida. 556, 10 Ann. Cas. 260, 86 Pac. 531; *Bell v. Bell,* 18 Ida. 636, 111 Pac. 1074.)

Prejudicial remarks of trial courts constitute error. (*Howland v. Oakland Consol. St. Ry. Co.,* 115 Cal. 487, 47 Pac. 255; *Schneider v. Great Northern Ry. Co.,* 47 Wash. 45, 91 Pac. 565; *Peterson v. Pittsburg Silver Peak Gold Min. Co.,* 37 Nev. 117, 140 Pac. 519; *Koontz v. State,* 10 Okl. Cr. 553, Ann. Cas. 1916A, 689, 139 Pac. 842; *Wheeler v. Wallace,* 53 Mich. 355, 19 N. W. 33; *Chicago City Ry. Co. v. Wall,* 93 Ill. App. 411; *State v. Jackson,* 83 Wash. 514, 145 Pac. 470.)

"It is the duty of the court to abstain carefully from any expression of opinion or comment upon the facts or evidence, not only in its charge to the jury, but also on the examination of witnesses and otherwise during the course

of the trial.'' (16 Corpus Juris, 832; 26 R. C. L. 1027; *State v. Clark,* 27 Ida. 48, 146 Pac. 1107.)

When an expert is placed upon the stand and testifies positively that stains are what they appear to be, namely, blood, he must show how or in what manner his examination was made, to make such evidence competent and legal evidence. (1 Wharton, Crim. Ev., 10th ed., sec. 423; Underhill, Crim. Ev., 2d ed., sec. 334.)

An incompetent defense is ground for new trial. (*State v. Jones,* 12 Mo. App. 93; *State v. Lewis,* 9 Mo. App. 321; *State v. Benge,* 61 Iowa, 658, 17 N. W. 100.)

Roy L. Black, Attorney General, and James L. Boone, Assistant, for Respondent.

A witness is permitted to refresh and assist his memory by the use of a written instrument and it is not necessary that the writing should have been made by the witness, providing after inspecting it, he can speak as to the facts from his own recollection. (*State v. Marren,* 17 Ida. 766, 107 Pac. 993; 1 Greenleaf, sec. 436.)

A verdict of the jury will-be reasonably considered and in such manner as to give effect to the meaning intended. (*Russell v. State,* 97 Ark. 92, 133 S. W. 188; *State v. McDonough,* 232 Mo. 219, 134 S. W. 545; *Pearson v. State,* 79 Tex. Cr. 609, 187 S. W. 336, 337; *Lee v. State,* 83 Tex. Cr. 532, 204 S. W. 110; *Kendall v. State,* 183 Ind. 162, 105 N. E. 899; *Ex parte Booth,* 39 Nev. 183, 154 Pac. 933; L. R. A. 1916F, 960; 1 Bishop's New Crim. Law, sec. 105; *Richardson v. State,* 72 Fla. 154, 72 So. 665; *Goodman v. State,* 188 Ind. 70, 121 N. E. 826; Abbott's Trial Brief, Crim. Causes, p. 728; *Webb v. State,* 138 Ala. 53, 34 So. 1011.)

In the absence of a request for an instruction defining circumstantial evidence, error cannot be predicated on an instruction defining circumstantial evidence where the latter correctly states the law, so far as it goes. (*State v. Nolan,* 31 Ida. 71, 169 Pac. 295.)

All instructions given by the court shall be taken and read together and considered as a whole as the law governing the case. (*Kennon v. Gilmer*, 5 Mont. 257, 51 Am. Rep. 45, 5 Pac. 847; *State v. Corcoran*, 7 Ida. 220, 61 Pac. 1034; *Hansen v. Haley*, 11 Ida. 278, 81 Pac. 935; *State v. Bond*, 12 Ida. 424, 86 Pac. 43; *State v. Neil*, 13 Ida. 539, 90 Pac. 860, 91 Pac. 318; *Barrow v. B. R. Lewis Lumber Co.*, 14 Ida. 698, 95 Pac. 682; *Anderson v. Great Northern R. R. Co.*, 15 Ida. 513, 99 Pac. 91; *Just v. Idaho Canal etc. Co.*, 16 Ida. 639, 133 Am. St. 140, 102 Pac. 381; *Tilden v. Hubbard*, 25 Ida. 677, 139 Pac. 1133; *Osborn v. Cary*, 28 Ida. 89, 152 Pac. 473; *Whitney v. Cleveland*, 13 Ida. 558, 91 Pac. 176; *People v. Cleveland*, 49 Cal. 578; *People v. Armstrong*, 114 Cal. 570, 46 Pac. 611; *State v. Pettit, ante*, p. 326, 193 Pac. 1015; 14 R. C. L., sec. 76, p. 820.)

"Execution" defined as capital punishment. (Funk & Wagnall's New Standard Dictionary; Webster's New International Dictionary; a New English Dictionary.)

Remarks of a court, not addressed to the jury, will not be considered as a comment on the evidence, or witness' credibility. (*State v. Mann*, 39 Wash. 144, 81 Pac. 561.) A remark of the judge on admission or rejection of evidence is not error where the jurors could not infer the opinion of the court on the guilt or innocence of the accused. (*State v. Roland*, 11 Ida. 490, 83 Pac. 337.)

A witness may testify that a certain substance is blood. (*State v. Rice*, 7 Ida. 762, 66 Pac. 87; *State v. Henry*, 51 W. Va. 283, 41 S. E. 439; *Greenfield v. People*, 85 N. Y. 75, 39 Am. Rep. 636.)

RICE, C. J.—The appellant and Pedro Espinoza were convicted of the murder of Francisco Biscarra in Madison county. Appellant was sentenced to be hanged.

At the trial, during the examination of the sheriff, Mr. Corey, he was questioned as to a conversation which he had carried on in his office with appellant after he had made the arrest. He stated that appellant told him, during the conversation, that the deceased had gone to El Paso, Texas.

He was asked whether or not he had told appellant, prior to the time this statement was made, that the body of deceased had been discovered. The sheriff stated that he told him of that fact during the conversation, but whether before or after the statement was made by appellant to the effect that the deceased had gone to El Paso, he did not know. Thereupon, the sheriff testified that the conversation was in the nature of questions and answers; that he had it taken down in shorthand by the son of the prosecuting attorney, and afterwards had a transcript made. The transcript was placed in his hands and he was asked to refresh his memory, but after refreshing his memory therefrom he testified that when he first started the conversation he told appellant that Biscarra was dead.

C. S., sec. 8033, provides: "A witness is allowed to refresh his memory respecting a fact, by anything written by himself, or under his direction, at the time when the fact occurred, or immediately thereafter, or at any other time when the fact was fresh in his memory, and he knew that the same was correctly stated in the writing. . . . . "

This statute was considered in the case of *State v. Marren*, 17 Ida. 766, 107 Pac. 993. In that case the court quoted with approval from 1 Greenleaf on Evidence, sec. 436, in part as follows: "It does not seem to be necessary that the writing should have been made by the witness himself, nor that it should be an original writing, provided, after inspecting it, he can speak to the facts from his own recollection."

However, we are of the opinion that the language of the statute is controlling. Although it seems that the transcript was made under the direction of the sheriff, it does not appear that it was made at the time when the fact occurred or immediately thereafter, or that when it was made the fact was fresh in his memory and that he knew the transcript was correct. The showing with reference thereto did not bring the transcript within the terms of the statute, and it should not have been used by the sheriff to refresh his memory. Nevertheless, the matter could not have caused

any injury to appellant. The purpose of placing the transcript in the hands of the sheriff was to enable him to refresh his memory so that he could testify as to whether or not, when appellant made the statement that deceased had gone to El Paso, he (appellant) had been told that the body of Biscarra had been discovered. The testimony of the witness, however, was substantially the same after he examined the transcript as it had been before.

With regard to the objection that the witness Munns had been permitted to refresh his memory by referring to the same transcript, it is sufficient to say that any error committed thereby was cured by the subsequent testimony of appellant himself. Appellant testified to substantially all the facts contained in the testimony of the witness Munns, so far as the transcript had any bearing.

During the cross-examination of the witness Garcia, which was conducted by means of an interpreter, the interpreter volunteered the following statement: "But he said before that it was plenty moonlight enough that he could see everything in the room. To this the court responded: "Well, just give what he answers now. Don't make any difference what he said before."

It is contended that this remark of the court was a comment upon the credibility of the witness; that it in effect was an instruction to the jury to disregard the previous testimony of the witness and consider only that which he was then giving, and also that the jury was not to test the credibility of the witness in view of any conflicting statements he may have made in the course of his testimony. This remark of the court could not reasonably have been so understood. It amounted to nothing more than a direction to the interpreter to translate the answers of the witness just as he gave them, and that it did not make any difference to the interpreter what the previous answers of the witness may have been. It was directed to the interpreter and not to the jury, and the purport was so plain that it would be altogether unreasonable to assume that any injury resulted to appellant therefrom.

It is also urged that the court erred in receiving and permitting to go to the jury the evidence of Dr. Walker, to the effect that stains upon the overalls worn by appellant at the time of the homicide consisted of dirt and blood mixed, when there is no evidence in the record to show that the blood was human blood and without any evidence to show how the examination was made. No objection was made to the receiving of this testimony. We are concerned only with the question of its competency.

A nonexpert witness may testify that stains found upon different articles had the appearance of blood-stains. (*State v. Welch*, 36 W. Va. 690, 15 S. E. 419; *Commonwealth v. Sturtivant*, 117 Mass. 122, 19 Am. Rep. 401.) A nonexpert witness may also testify that stains or discolorations were caused by blood. (*State v. Rice*, 7 Ida. 762, 66 Pac. 87; *People v. Loui Tung*, 90 Cal. 377, 27 Pac. 295; *People v. Gonzalez*, 35 N. Y. 49; *Greenfield v. People*, 85 N. Y. 75, 39 Am. Rep. 636; *Lightner v. State*, 195 Ala. 687, 71 So. 469.) This is especially true when a witness is describing objects which cannot be brought into the courtroom as exhibits. The authorities, however, do not confine such testimony to cases where the objects themselves cannot be exhibited to the jury, but courts have frequently permitted such testimony to be given with regard to exhibits received on the trial of the cause. (*People v. Gonzalez, supra; Commonwealth v. Sturtivant, supra; State v. Bradley*, 67 Vt. 465, 32 Atl. 238.) In the case of *Johnson v. State*, 80 Miss. 798, 32 So. 49, it was held to be error to permit a witness to testify that there was blood on a shirt and a pair of overalls, and that they appeared to have been washed in places, without producing them or explaining their nonproduction.

Dr. Walker testified as to his qualifications as a physician and surgeon. He was not asked to testify as to his qualifications as a microscopist, or that he had experience in making chemical analyses of blood. Neither was he examined as to the character of the tests which he made to determine whether or not the stains were made by blood and

dirt mixed. His testimony, however, was not incompetent. The testimony which he gave did not require, for its reception that he qualify himself as an expert. In *State v. Bradley, supra,* it was held that a physician of experience could testify and give his opinion as such that certain discolorations were made by blood, the matter with reference to which he was testifying coming within the scope of his profession and experience. Dr. Walker was not asked, nor did he testify that the blood was that of a human being.

In charging the jury, the court gave instruction No. 22 as follows: "Circumstantial evidence in criminal cases is the proof of such facts and circumstances, connected with or surrounding the commission of the crime charged as tends to show the guilt or innocence of the party charged; and these facts and circumstances must be sufficiently conclusive to convince the jury to a moral certainty and beyond a reasonable doubt of the guilt of the defendants, or either or both of them, as charged in the information before the jury can convict them, or either or both of them; and if the facts and circumstances shown by the evidence in this case are sufficient to satisfy the jury of the guilt of the defendants, or either or both of them, beyond a reasonable doubt then such evidence is sufficient to authorize the jury in finding the defendants, or either or both of them, as the evidence may disclose, guilty. The law demands a conviction wherever there is sufficient legal evidence to show the defendants' guilt, or either or both of them, as the case may be, beyond a reasonable doubt, and circumstantial evidence is legal evidence."

It is urged that it is error to instruct the jury that circumstantial evidence is legal evidence, without going further and instructing as to the essential requirements of circumstantial evidence in order to warrant a conviction. In this connection it should be noted that there was direct testimony as to the commission of the crime by appellant. In instruction No. 5, the court enumerated the essential ingredients of the charge contained in the information, all of which, the jury was informed, must be proved beyond a

reasonable doubt and to a moral certainty in order for defendants, or either of them, to be convicted. The court also gave instruction No. 15 as follows: "The jury are instructed that mere probabilities are not sufficient to warrant a conviction; nor is it sufficient that the greater weight or preponderance of the evidence supports the allegations of the information. To warrant a conviction of the defendants, or either or both of them, they must be proved to be guilty so clearly and conclusively that there is no reasonable theory upon which they, or either or both of them, can be innocent, when all the evidence in the case is taken together. So that unless the jury, after a careful and thorough consideration of all of the evidence in the case, can say and feel that every material allegation in the information is proved beyond a reasonable doubt, and to a moral certainty, the jury should find the defendants, or either or both of them, as the evidence may disclose, not guilty."

In view of the entire charge to the jury, error cannot be predicated upon the giving of instruction No. 22.

Appellant contends that the court erred in entering judgment upon the verdict as rendered. The verdict is as follows: "We, the jury, duly sworn and impaneled in the above-entitled cause, find the defendants Visente Ramirez and Pedro Espinoza guilty of murder in the first degree, as charged in the information and fix the penalty for Visente Ramirez at Execution and for Pedro Espinoza at ————."

The jury was instructed in the language of C. S., sec. 8212, as follows: "Every person guilty of murder in the first degree shall suffer death or be punished by imprisonment in the state prison for life, and the jury may decide which punishment shall be inflicted."

It is contended that the word "execution" does not have the same meaning as the word "death," and that the verdict does not amount to a decision of the jury fixing the punishment at death. It is suggested by counsel for respondent that if the word "execution" in the verdict does not mean the infliction of the death penalty, the result is

that the jury failed to decide which punishment should be inflicted and that it then became the duty of the court to do so and to enter judgment. In order for that result to be reached, it would be necessary to ignore the word "execution" in the verdict and treat it as a surplusage. That principle cannot obtain in this case. The statute gives the jury the permissive right to decide which of two penalties may be inflicted. When the jury exercises that right, its action is binding upon the court. The jury undertook to exercise that right, and its action in so doing cannot be ignored. If a verdict discloses that the jury intended to decide which punishment should be inflicted, and it is uncertain as to what its decision is, it is the imperative duty of the trial court to refuse to accept the proffered verdict and return it to the jury for correction.

The verdict of the jury, however, was not uncertain.

Bishop's New Criminal Procedure, vol. 2, 2d ed., sec. 1005, contains the following: "The language of the verdict, being that of 'lay people,' need not follow the strict rules of pleading, or be otherwise technical. Whatever conveys the idea to the common understanding will suffice. And all fair intendments will be made to support it."

In *Richardson v. State,* 72 Fla. 154, 72 So. 665, it is said: "Verdicts in criminal cases should be certain and import a definite meaning, free from ambiguity; but any words that convey beyond a reasonable doubt the meaning and intention of the jury are sufficient, and all fair intendments should be made to sustain them. If the intention of the jury is correctly manifested in the language used, mere inaccuracies of expression will not vitiate the verdict." (See, also, *State v. Schweitzer,* 18 Ida. 609, 111 Pac. 130; *Willingham v. State,* 62 Tex. Cr. 55, 136 S. W. 470.)

That the word "execution" is often used to indicate the infliction of the death penalty upon the sentence or judgment of a competent tribunal is recognized by the standard dictionaries of the English language.

One of the definitions of the word "execution" contained in Webster's New International Dictionary, is as follows:

"(6) Formerly, any punishment ordered legally; now, specif., capital punishment; a putting to death as a legal penalty."

In Funk & Wagnall's New Standard Dictionary, the word "execution" is defined as follows: "(3) The infliction of capital punishment in accordance with the sentence of a court."

The New English Dictionary contains the following definition of the word: "(8). The infliction of punishment in pursuance of a judicial sentence; an instance of this . . . . (b) spec., the infliction of capital punishment; the putting (a person) to death in pursuance of a judicial or authoritative sentence."

There can be no doubt that when the jury by its verdict fixed the penalty of Vicente Ramirez at execution, it was exercising the right granted by section 8212 and decided that the punishment to be inflicted in his case was that of death.

Finally it is urged that appellant failed to have a fair and impartial trial, and that the judgment should be reversed on that account. That a judgment of conviction cannot be permitted to stand unless the defendant has had a fair and impartial trial is fundamental. In order to secure a fair and impartial trial the constitution and the statutes contain many provisions.

Art. 1, sec. 13, provides that in all criminal prosecutions, the party accused shall have the right to a speedy and public trial; to have the process of the court to compel the attendance of witnesses in his behalf, and to appear and defend in person and with counsel; that no person shall be twice put in jeopardy for the same offense; nor be compelled in any criminal case to be a witness against himself; nor be deprived of life, liberty or property without due process of law. Art. 1, sec. 18, provides that courts of justice shall be open to every person and a speedy remedy afforded for every injury of person, property or character, and right and justice shall be administered without sale, denial, delay or prejudice.

The statutes also contain many provisions, the purpose of which is to insure a defendant in a criminal case a fair and impartial trial. If he should be proceeded against by information, he must have had a preliminary examination, unless he waives the same; he must have been committed by a magistrate to answer the charge which is thereafter set forth in the information; his right to challenge those who are called as jurors is amply preserved, and there are many other provisions which it would serve no good purpose to enumerate.

It is not contended that appellant has been deprived of any specific constitutional or statutory right. But aside from these, it is urged that an inspection of the record shows he did not have a fair trial or an adequate defense. Doubtless it is possible that a record may disclose that although a defendant has not been deprived of any specific constitutional or statutory right or guarantee, yet he has not had a fair and impartial trial, and he might be entitled to a reversal of the judgment, but when this field is entered it is one which is not well defined. In the case of *The Queen v. Gibson,* L. R. 18 Q. B. Div. 537, a judgment of conviction was reversed because the identification of the prisoner was made by evidence legally incompetent. Lord Chief Justice Coleridge remarked: "I am of opinion that the true principle which governs the present case is that it is the duty of the judge in criminal trials to take care that the verdict of the jury is not founded upon any evidence except that which the law allows. Here evidence which was at law inadmissible was allowed to go to the jury." It appears, in that case, that though the prisoner was defended by counsel, no objection was made at the trial to the reception of the incompetent evidence.

Where one convicted of crime fails to show specific prejudicial error committed at the trial, and the record fails to disclose that he has been deprived of some constitutional or statutory right or guarantee, he cannot secure a reversal on the ground that he did not receive a fair and impartial trial unless it appears that he has been convicted from a

consideration of incompetent evidence, or evidence which does not tend to prove him guilty of the crime alleged, or unless it appears from the record that the trial was so improperly conducted that the appellate court is enabled to say from the record as a whole that defendant was deprived of his substantial rights.

Counsel suggests, it is true, that witnesses were not cross-examined to the extent that they might have been; that the prosecuting attorney was allowed to ask leading questions to a greater extent than was fair; that counsel for the defense, appointed by the court, consented to go to trial within twelve days after their appointment, a length of time manifestly too short to prepare for the defense of such a serious charge, and that apparently no effort was made to obtain evidence of the previous good reputation of appellant. But we do not consider any of these matters, or all of them together, sufficient to negative the presumption of a fair trial. Probably no counsel conducts a defense of one accused of crime in the same manner as another counsel would do. Criticism which is believed to be well founded might be urged with reference to any criminal defense, but such criticism cannot lead to a reversal of the judgment unless it becomes apparent that the substantial rights of the defendant have been invaded and that there has been a perversion of justice.

From the record in this case, it does not appear that appellant was not accorded a fair and impartial trial.

The judgment is affirmed.

Budge, McCarthy, Dunn and Lee, JJ., concur.

Petition for rehearing is denied.