**UNITED STATES of America, Appellee,**

v.

**Dewayne WHEELER, Appellant.**

**No. 23712.**

United States Court of Appeals, Ninth Circuit.

Dec. 2, 1970.

Max F. Parrish (argued), of Parrish & Pincock, Pocatello, Idaho, for appellant.

Jay F. Bates (argued), Asst. U. S. Atty., Sherman F. Furey, Jr., U. S. Atty., Boise, Idaho, for appellee.

Before MADDEN, Judge of the United States Court of Claims,* and HAMLEY and ELY, Circuit Judges.

ELY, Circuit Judge:

Wheeler is an Indian. He was convicted of the offense of rape by an Indian within an Indian reservation. 18 U. S.C. § 1153. On this appeal, Wheeler presents several contentions, and a variety of considerations, in combination, have impelled us to the conclusion that Wheeler is entitled to another trial.

The victim of the alleged rape was Wheeler's former wife, Carol Ann Diggie. Almost nine years before the incident in question, Mrs. Diggie and Wheeler had been divorced by the tribal court. Thereafter, she married Diggie and lived on the Fort Hall Reservation with him and their two children. On the night in question, Diggie and Wheeler encountered each other in a bar and drank intoxicants together until the bar was closed. Wheeler was extremely drunk when the men left the bar in the company of an unknown young lady. The trio met several companions with whom they proceeded to an outdoor area. About two o'clock in the morning, an argument occurred, and Wheeler was severely beaten by several members of the group. To escape from his assailants, he leaped into a nearby river and, by swimming and then walking, eventually found his way to the trailer home of the Diggies. His former wife was there alone with the sleeping children. It is far from clear what happened while Wheeler was in the trailer, but some time later he and Mrs. Diggie had sexual intercourse in a nearby field.

Mrs. Diggie's testimony was to the effect that Wheeler had entered the trailer belligerently and had been abusive toward her. She testified that he struck her several times, that he pushed her toward the bedroom, that she ran from the trailer looking for help, and that Wheeler caught her in the field and pulled her down. She claimed to have been temporarily stunned and to have awakened to find Wheeler on top of her. Although she, according to her testimony, was wearing a housecoat and pajamas with long pants, her former husband was able to remove her clothing and force entry over her "pleading." She also testified that it was the "pain" of Wheeler's first thrust that compelled her to lie quietly and to remain so throughout the union. Eventually, her husband arrived at the home in his automobile. She remained quiet, but immediately after the lights of her husband's vehicle were extinguished, she ran inside the trailer. Diggie did not at first believe her then statement to him that she had been forcibly raped, but she was apparently able to convince him, at last, that such was the fact.

As might be expected, Wheeler countered this testimony with an account that indicated consent on the part of his former wife. His version was that he, in a drunken and beaten condition, had gone to the home of his friend Diggie, seeking help. He then told of Mrs. Diggie's solicitude and of advances made by her as she reaffirmed her affection for him. There is the suggestion, of course, that the drunken Diggie, outraged over his wife's return, in disarray, himself inflicted whatever marks of violence appeared upon her.

■ In viewing the evidence in the light most favorable to the Government, as we are required to do, we cannot say that it, coupled with permissible inferences, was insufficient to support the conviction. *See* Glasser v. United States, 315 U.S. 60, 62 S.Ct. 457, 86 L. Ed.2d 680 (1942). It would require somewhat less than ordinary human un-

---

* Honorable J. Warren Madden, Senior Judge of the United States Court of Claims, sitting by designation.

derstanding, however, not to acknowledge that the convicting evidence is of doubtful strength. At the same time it was for the fact finder to determine if Wheeler, admittedly drunken .and beaten, forced his former wife into the open field, raped her by force, and, by his penetration alone, caused her to remain silent as people passed close by.

Another consideration is that there was a major variance between one fact alleged in the indictment as an element of the offense and the elements as eventually outlined in the jury instructions. The indictment alleged that Carol Ann Diggie was an Indian female. Both the prosecution and the defense obviously assumed therefrom that it would be necessary for the Government to prove that Mrs. Diggie was an Indian. A great portion of the trial was focused upon that issue. The prosecution introduced evidence regarding the woman's lineage and her relationship with the tribe of Shoshone-Bannock. The defense countered with evidence tending to show that she was of less than half Indian blood and that she was not enrolled as a member of any tribe. When the case was finally submitted to the jury, however, the instructions did not require that, for conviction, the Government must have proved that Mrs. Diggie was an Indian female. The court's instructions were proper as to this, for the statute gives the federal courts jurisdiction over the offense of rape committed by an Indian on an Indian reservation without regard to the ethnic status of the victim.[1] But, in the special circumstances of this case, it was hardly fair to Wheeler that the whole trial should have been allowed to proceed principally on a certain factual dispute, to which a substantial portion of both defense and prosecution efforts were devoted, and then, in jury instructions, eliminate the dispute as an issue.

A third factor involves the timely efforts of Wheeler's appointed counsel to obtain continuances for further preparation. Only one month after his appointment, this attorney was required, over his strenuous objection, to proceed with the trial. There were many available witnesses whom he apparently wished to interview and whom he was not able to contact within such a short time. In addition, there arose, during the trial, a major question of law concerning the validity of Mrs. Diggie's tribal divorce from Wheeler. Counsel requested time to accumulate and present evidence, as well as legal authorities, on this issue but was denied that request also.

Motions for continuances based on a lack of preparation are, and should be, addressed to the sound discretion of the trial court. At the same time, reviewing courts must be alert to the possibility that a defendant may occasionally be denied his right to effective representation of counsel if sufficient time for adequate preparation is unavailable. Although every defendant cannot be guaranteed the highest quality of defense, the requirement that he be supplied with counsel contemplates the assurance that a nondilatory attorney must be given the opportunity fully to explore the factual and legal problems of his case. Here, we have concluded that the requests made by Wheeler's attorney were made in good faith, that there were adequate bases therefor, and that they should have been granted. *See* Sykes v. Virginia ex rel. Peyton, 364 F. 2d 314, 316 (4th Cir. 1966) ; Everitt v.

---

1. We note in passing that the statute in question provides imprisonment as the maximum penalty for an Indian raping a female Indian within Indian country. On the other hand, it would appear that under 18 U.S.C. § 2031 an Indian raping a non-Indian female within Indian country could be inflicted with the penalty of death. While the disparity is unimportant in the consideration of this case, it seems to us that the discriminating provisions are demeaning to Indian females and do not comport with our country's modern ideals. *Compare, e. g.,* Loving v. Virginia, 388 U.S. 1, 87 S.Ct. 1817, 18 L.Ed.2d 1010 (1966). 18 U.S.C. § 1153 is derived from a statute enacted in 1885, and the derivation of 18 U.S.C. § 2031 is apparently almost as old.

United States, 281 F.2d 429 (5th Cir. 1960).

No one of the three factors which we have discussed would have, in and of itself, required reversal. In sum, however, they so trouble us that we are fearful that Wheeler's full due process rights may have been infringed.

Reversed and remanded.