483 P.2d 173

STATE of Idaho, Plaintiff-Respondent,

v.

Margil SANCHEZ, Jr., alias Mike Sanchez,
Defendant-Appellant.

No. 10405.

Supreme Court of Idaho.

Feb. 10, 1971.

Rehearing Denied April 1, 1971.

R. Don Bistline and Beverly Bistline,. Pocatello, for defendant-appellant.

Robert M. Robson, Atty. Gen., Walter H. Bithell, Asst. Atty. Gen., Boise, and Thomas E. Moss, Pros. Atty., Blackfoot, for plaintiff-respondent.

McFADDEN, Justice.

Margil Sanchez, Jr., was charged with the crime of voluntary manslaughter of his stepson, eighteen month old Shane Furney, and on trial was found guilty of the lesser included offense of involuntary manslaughter. From the judgment of conviction, he appeals.

The defendant and his former wife, DeAnna Lyn Furney, were married in January, 1967, while the defendant was still in the armed forces. Sanchez remained in the states for three months and was shipped overseas, later returning to Blackfoot. He was finally discharged from the service in August, 1967. At the time of the marriage his wife had three small children, issue of a previous marriage and Shane Furney, a son born out of wedlock. Sometime following the death of Shane, on January 9, 1968, which death the defendant was found to have caused, his wife obtained a divorce from Sanchez.

The record discloses that at about 8:05 a. m. on January 9, 1968, the defendant and his wife brought Shane Furney to the emergency room of the Bingham Memorial Hospital in Blackfoot. Mr. Staley, a technologist at the hospital who was also the county coroner, met the couple with the baby at the emergency room, and Mr. Staley attempted to give the child artificial respiration. A physician at the hospital, Dr. Hales, came in, checked the child and pronounced the boy dead. Consent was given for performing an autopsy, and later that day an autopsy was performed by Dr. Hazel McGaffey, a pathologist.

Dr. McGaffey testified as to the results of the autopsy she performed and stated that the child's death was caused by internal injury, particularly to the pancreas, with secondary hemorrhage into the abdominal cavity. She stated that the hemorrhage was from the crushing of the head of the pancreas, and that from her examination the injury must have been inflicted not less than thirty minutes and not more than three hours prior to the time of death.

At the time the child was brought to the hospital his extremities were cold, although where his body was covered the body was still warm. Rigor mortis had not yet commenced. The time of death was not clear.

Mr. Staley, Dr. Hales and Dr. McGaffey all testified to the presence of bruises on the boy's head and face and on his body and legs. Dr. McGaffey stated she saw no evidence of external bleeding.

The state in its presentation of the case relied entirely upon circumstantial evidence raising the inference that the defendant inflicted the injury to the child resulting in his death. Mrs. Furney, the child's mother, was called as a witness for the state, and she testified that the night before the child died she had returned home from a meeting about 11:30 p. m., that she bathed the child, who had been suffering from the flu and also recovering from chicken pox. She clothed her son with a pair of pajamas, a pair of blue plastic pants, and a diaper made out of a dish towel. She testified that at the time of the bath she observed only one bruise on his body, a deep bruise on his face resulting from a hard slap by the defendant three days earlier. She stated that she would have noticed if there had been other bruises on Shane's body at this time. After the baby was cleaned and dressed, she took him upstairs and made a bed for him on the floor next to the bed occupied by her and the defendant so that she could watch him through the night. The child was restless and would not stay in his bed and she later took the child downstairs and put him into his own bed.

Mrs. Furney testified that when she returned to bed she fell asleep, woke up once when the defendant arose and went downstairs, but fell asleep again. The next thing she remembers is that the defendant came running up the stairs, excitedly screaming, "Oh, no; oh, no!" He told her something was wrong with the baby, and she immediately went downstairs, found the baby in the crib badly bruised, lying on his back. She called the hospital, got a neighbor to stay with the other children and she and the defendant took the child to the hospital.

Mrs. Furney could not accurately state how long a time had elapsed after she heard the defendant arise from the bed and before he returned screaming. The coro-

ner, Mr. Staley, stated that the baby had on a nightshirt and a diaper. There is nothing in the record to show what happened to the other clothing which the mother had placed on the baby after she had bathed him. However, the record is not clear as to whether the baby was fully clothed when brought to the hospital.

There was considerable evidence introduced over objection concerning bruises and bruise marks on the other children, and there was testimony concerning an incident which happened on September 7, 1967, when the deceased child was badly bruised around the head and to the extent that there was evidence of a slight skull fracture to the child. Defendant stated that this injury occurred when he was carrying the child up the stairs and he stumbled, the child hitting the hand rail along the staircase. There was also an incident testified to concerning the defendant giving a strong alcoholic beverage to Shane on Thanksgiving day of 1967 and that the child was badly affected by it.

On January 8, 1968, the morning preceding the child's death, the defendant arose and was preparing breakfast for the children. Sanchez had the flu that day and did not go to work. He testified that he heard a cry and upon looking found Shane lying on his back on a landing on the stairs leading to the basement where he had apparently fallen. Sanchez stated that he went down to help the child and in the process of going to him, stumbled, with his knee hitting the child in the abdomen. Sanchez testified that the baby was having difficulty breathing, that he took the child to the basement and splashed some water on him and he started to breathe normally.

There was also testimony that sometime in the afternoon of January 8, 1968, the defendant changed the diaper on Shane, and in so doing he found Shane's hands and feet were cold. The clothes dryer was still warm and the defendant testified that he made a "bed out of the diapers in the dryer and I laid him in there for a second and then I took him out." However, the

door of the dryer somehow closed and it started to run; the defendant opened the door and took the boy out. He saw no blood in the dryer at that time.

During the course of the trial the state, over the objection of the defendant, introduced into evidence the door to the dryer. The bottom part of the door had certain stains on it that were testified to by Mr. Staley as being human blood. Mrs. Furney testified that she had noticed blood on the dryer a couple of days following the death of her son, but the police officer and coroner were not notified of this fact until sometime in February, 1968.

This overview has been set forth to give a background for consideration in the proper context of the assignments of error submitted by the defendant.

■ The first assignment of error is directed to the testimony of Mr. Staley, the coroner, who was permitted to testify concerning a conversation he had with the defendant at the hospital following the determination that the child was dead. Staley testified that he had asked that an autopsy be performed and permission was given, but before that Staley had asked the defendant what had happened and the defendant told him about the incident when the child had fallen down the stairs. The defendant contends this was error inasmuch as he had not first been advised of his constitutional rights. This assignment is without merit as there was no objection ever interposed to the admission of this testimony at the trial. State v. Taylor, 76 Idaho 358, 283 P.2d 582 (1955), and State v. Boyatt, 59 Idaho 771, 87 P.2d 992 (1939), which cases hold that absent an objection to admission of the testimony this court will not consider the issue on appeal. Moreover, the conversation to which the assignment of error was directed was not a custodial interrogation. Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L. Ed.2d 694 (1966), upon which the defendant relies, requires that the defendant be advised of his constitutional rights only before an in-custody interrogation takes

place. At the time of the conversation Sanchez was not in custody and Miranda v. Arizona, supra, is not applicable. See State v. White, 3 N.C.App. 31, 164 S.E.2d 36 (1968), which is similar to the case at bar, and United States v. Montos, 421 F.2d 215 (5th Cir. 1970). See also State v. Carpenter, 92 Idaho 12, 435 P.2d 789 (1967).

Error is assigned to the admission of testimony of a number of witnesses who testified as to prior acts of discipline by the defendant against not only Shane, the deceased boy, but also against the other children in the household. It is contended that this testimony of other acts by the defendant was not connected with the crime with which he was charged. The state, however, urges that whereas the general rule is that past acts of bad conduct or criminal actions cannot normally be admitted into a criminal case, there are certain exceptions to this rule. One of the exceptions to the general rule as urged by the state is that prior acts or conduct by a defendant are admissible to establish motive, intent or absence of mistake or accident. State v. Eubanks, 86 Idaho 32, 37, 383 P.2d 342 (1963).

This court in previous cases had held that evidence of other criminal acts may be introduced: to establish motive, State v. Newman, 70 Idaho 184, 214 P.2d 159 (1950), (evidence admitted of intimate relationship between accused and decedent's spouse to establish motive in a murder prosecution); to establish knowledge on defendant's part, State v. Montgomery, 48 Idaho 760, 285 P. 467 (1930), (proof of receipt of other stolen goods to establish knowledge the goods were stolen); to establish absence of mistake, State v. Cochrane, 51 Idaho 521, 6 P.2d 489 (1931), (proof that money was collected on other accounts but not paid over); to establish specific intent, State v. Sedam, 62 Idaho 26, 107 P.2d 1065 (1940), (other checks drawn on a depleted account).

■ These cases are not directly in point on the issue here, as they all dealt with facts that reflected the commission by the defendant of other crimes. In this case involving the death of an eighteen month old boy, there was evidence that the defendant at various times had disciplined the decedent as well as the other children. There was evidence that the discipline had been imposed by the defendant slapping the children with his hand on occasion, and on other occasions by the use of a belt. There was also evidence that this discipline had been imposed not only with the consent of the children's mother, but that she had expected him to discipline the children in order that they gain respect for their step-father. This evidence interjected another issue into this case, i. e. whether the corporal discipline employed was excessive. The trial court was aware of the problem of whether the probative value of it outweighed the prejudicial effect on defendant's position. In this type of case involving abuse of a small child, the facts are not easily unraveled, and the state is faced with a most difficult problem of attempting to prove exactly what did take place. It is the conclusion of this court that in such a situation the trial court properly admitted this evidence in order to give to the jury the full picture of the situation in the home where the tragedy occurred. It is recognized that this testimony might have tended to inflame the minds of the jurors, especially where children of the tender age of those involved here are concerned, yet this testimony was of probative value to bring out the attitude of the defendant towards his step-children, and towards the deceased child.

■ Concurrent with the above testimony concerning discipline in Shane's home and over the objection of defense counsel, two photographs, exhibits L and M, were admitted in evidence. These showed thigh and groin bruises on one of the other boys in the family, depicting his condition on the day Shane Furney died. The above reasoning covers the objection to these exhibits. While the bruised condition of another child is in one sense remote from the issues at trial, the pictures graphically demonstrated defendant's brand of disci-

pline. In answer to the objection that the bruises were not connected to any action by defendant, the record shows that after the exhibits were admitted defense counsel elicited and accepted hearsay testimony from the witness then on the stand to the effect that the bruises were the result of a "spanking" administered by defendant.

■ Defendant also contends that the trial court erred in permitting his former wife to testify as to certain statements made by the defendant to her wherein the defendant suggested to her that she put Shane up for adoption, that the defendant called the boy a "little bastard" and stated that "he [Shane] didn't even need to live." These statements were attributed to the defendant through Mrs. Furney's testimony and were relevant to show his attitude of animosity or malice toward the child. This testimony was relevant and the trial court did not err in admitting it.

Defendant objects to certain testimony by DeAnna Furney as to the injuries sustained by Shane on September 7, 1967. She testified that on September 7, 1967 when she had come home the defendant told her that when she got up in the morning not to be unduly alarmed as Shane had a little bruise on his head from a fall downstairs. She testified that when she saw the boy the next morning, September 8, 1967, his head was black and blue and swollen out of shape. The baby was taken to Dr. Hales who testified he treated the boy on the occasion and that there was a slight fracture of the skull and a hematoma on the side of the head. This testimony all came in without objection, and the question of its admissibility cannot be raised for the first time on appeal. State v. Taylor, supra; State v. Boyatt, supra. There was no error shown from the record in this regard.

Defendant assigns error to the admission of exhibit G, a picture of the clothes dryer with the door removed and a man pointing to finger prints on a nearby wall, and exhibit J, a picture of the inside of the dryer. Defendant by his trial counsel (who subse-

quently died and other counsel are handling this appeal) specifically stated that he had no objection to them being admitted, and thus, defendant is precluded from objecting to them on this appeal. State v. Taylor, supra; State v. Boyatt, supra.

Defendant assigns as error the admitting into evidence of exhibit F, the door to the clothes dryer.

■ Prior to the time that exhibit F was offered in evidence, Mrs. Furney had testified that a couple of days after the child died she went downstairs to put some clothes in the dryer and there was blood on it. She continued:

"* * * and later I faced Mike with this, and asked him if he put the baby in the clothes dryer and he said 'no'; and I asked him how the blood got in the clothes dryer and he said he didn't know; and I told him that it just doesn't get there like that; and he said 'well, the baby was cold and I put him in the clothes dryer to warm him up.' I said 'did you turn it on' and he said 'no,' but there was blood all over inside, and there was blood on the top of the door and on the bottom of the door and I said 'well it would have to go around to get that blood like that,' and he said 'no, I didn't turn it on,' he said 'it was on and I just kind of shut the door to get him warm, and it must have turned on'; and I said 'did it go around,' and he said 'yes, he must have gone around a couple times.' "

The state had Mrs. Furney identify exhibit F, the door of the clothes dryer, and it was offered in evidence. Defendant objected to its admission on the ground that "we don't believe proper foundation has been laid to identify this sufficiently." The trial court sustained this objection and Mrs. Furney further testified that it was the door of the same clothes dryer in which the defendant had admitted putting the deceased child. The offer was renewed, and defendant examined Mrs. Furney in aid of an objection. This examination developed that the officers came and took the door off the dryer a week and a

half later; that she had used the dryer in the meantime, but that she hadn't noticed the blood on the bottom part of the door until some time later. The defendant renewed his objection that the door had not been sufficiently identified and that there was no proof where the blood came from. The trial court overruled the objection and it was admitted in evidence. We find no error in overruling defendant's objection to this exhibit as it had been sufficiently identified to connect it to the occurrences involving the defendant and child that day. The weight to be given this evidence was for the jury to decide.

When the defendant later took the stand, he testified concerning the incident involving Shane and the dryer; he stated that at the time he took Shane out of the dryer, the boy was not bleeding externally, and that the only evidence of any bleeding was a small cut on one of the boy's fingers. Mrs. Furney testified that when she bathed the boy before putting him to bed next to her she saw no evidence of any external injury.

■ Error is also assigned to the admission into evidence of exhibit K, a picture of some "bloody finger prints" on the wall near the clothes dryer. Officer Nichols testified that in response to a call from Mrs. Furney the night before, he and Mr. Staley went to the residence on February 14, 1968, when Mrs. Furney showed them the dryer and the underside of the dryer door which had dried blood on it. At that time, he removed the dryer door (exhibit F), and also took the picture of the finger prints. Defendant objected to the admission of the exhibit on the grounds that it was incompetent, being too remote and further that it was not properly identified. The record contained no evidence that the finger prints were of human blood, and because of the texture of the wood there was no identification of who made the prints. This was a valid objection.

While admission of exhibit K was error, it is our conclusion it was not prejudicial.

Previously exhibit G had been admitted into evidence without any objection. This exhibit was a picture of the interior of the basement showing the clothes dryer and also the arm of an individual pointing to some marks on the wall. Exhibit K was a close-up of the marks on the wall shown in exhibit G. It is difficult to see any real prejudice to the defendant in admission of exhibit K.

I.C. § 19-2819 applies to the situation presented in this appeal. This court must consider the substantial rights of the parties and disregard technical errors. But of course, substantial justice must be done in every case. Here the defendant does not appear to have been so substantially prejudiced by the error that his defense was rendered impotent. While bloodstained objects typically get extra attention from the jury, it should be remembered that here the defense counsel, in the presence of the jury, strongly attacked the prosecution's failure to identify the blood type and failure to convincingly demonstrate how and when the objects came to be stained. Again, the record before and after does not mention any significant external bleeding by decedent or any other person. These factors would have significantly detracted from the weight given the exhibits by the jury. The prejudice to defendant, then, does not constitute reversible error.

■ The defendant contends that the trial court erred in not declaring a mistrial when the prosecuting attorney in re-cross examining the defendant inquired as to his prior plea of guilty to the charge of involuntary manslaughter [as alleged in an amended complaint filed herein]. The record reflects that the prosecuting attorney asked the defendant

"Now with reference to your plea of guilty to Involuntary Manslaughter, at that time you were willing to acknowledge that you had committed a felony, is that correct?

A. Yes."

At this time defendant's counsel moved that the answer be stricken and asserted that it was immaterial, incompetent and irrelevant to this case as to how he felt about it. The prosecuting attorney explained, the reason for the question was to explore what the defendant had previously stated. While the defendant was being previously cross examined by the prosecutor he was asked,

"When you talked to Officer Nichols and Mr. Staley, you testified at the preliminary hearing—isn't it a fact you gave the impression that this [defendant's fall on top of the child who was lying on the stair landing] accounted for the baby's death?

A. I was afraid that that was what happened; that is why I pleaded guilty to Involuntary Manslaughter. Of course if I killed him, that means I go to prison —I will go to prison for it; but I am just saying that I didn't beat him to death, because I never double my fist up or kicked any of the children—ever. The only reason I removed my plea from guilty was because when they told me that he died in the middle of the night, that he had to have been hurt at four o'clock or so, and I knew that I had been in bed."

This statement by the defendant came into the record without objection or motion to strike. Examination of the record discloses that the trial court did not err in this regard, for when later in the trial on cross examination, an attempt was made to again go into this issue the trial court sustained the objection to it.

Defendant finally assigns as error the action of the trial court in fixing the maximum sentence at ten years. This sentence is within the statutory limits for involuntary manslaughter. I.C. § 18-4007. There was no error in this regard. King v. State, 91 Idaho 97, 416 P.2d 44 (1966).

The judgment of the district court is affirmed.

McQUADE, C. J., and DONALDSON, SHEPARD and SPEAR, JJ., concur.

## ON DENIAL OF PETITION FOR REHEARING

McFADDEN, Justice.

Appellant has petitioned for rehearing setting forth therein three points for reconsideration. After studying the petition and accompanying brief the court is of the view that appellant misunderstood the thrust of the opinion and a clarification is warranted.

The opinion viewed appellant's prior conduct towards the children and the home situation generally as material issues at trial. It recognized, however, the problem of proof where several incidents occurred when the children were in appellant's sole custody and yet the children (the best witnesses) were too young to testify. Exhibits L and M were relevant to the home situation issue and sufficient testimony came in without objection to also connect what the exhibits depicted to appellant's actions.

The bloodstained dryer door was properly admitted in that it was connected to Mrs. Furney's discovery of the bloodstained clothes dryer and her confrontation of appellant with the discovery. The discovery by his wife of the stains clearly prompted appellant to admit to placing Shane in the dryer. Thus, it was the evident prior knowledge by appellant that the stains existed that was crucial and not whether the bloodtype matched that of decedent.

Exhibit K, a picture of bloody fingerprints, was erroneously admitted because it was not shown to be connected to the dryer incident. The error cannot be viewed as prejudicial since exhibit G, a photograph which also depicted the prints shown in K was admitted earlier without objection.

The cases cited in the petition are not persuasive here. State v. Wheeler, 70 Idaho 455, 220 P.2d 687 (1950), and State v. Wilson, 93 Idaho 194, 457 P.2d 433 (1969), stand for the proposition that a defendant cannot be convicted by evidence

pertaining to an issue that is irrelevant. State v. Ramirez, 33 Idaho 803, 199 P. 376 (1921), supports the opinion as issued in that on appeal this court must read the record to determine if on the whole defendant has had a "fair" trial. *Ramirez* clearly supports our position when it notes that certain evidentiary errors had been cured by subsequent events in the trial.

United States v. Wheeler, 434 F.2d 1195 (9th Cir. 1970), presented a situation where two procedural errors combined with a doubt by the appellate judges that the evidence had sufficient weight to cause reversal. In the case at hand one exhibit was improperly admitted. However, in view of the record that error does not warrant a new trial.

The petition for rehearing is denied.

McQUADE, C. J., and DONALDSON, SHEPARD and SPEAR, JJ., concur.